■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BILLY GRIER, Appellant. [709 NYS2d 607] —Appeal by the defendant from a judgment of the County Court, Westchester County (Smith, J.), rendered March 6, 1997, convicting him of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree (two counts), and criminal possession of a controlled substance in the seventh degree (two counts), after a nonjury trial, and imposing sentence.

Ordered that the judgment is affirmed.

On the morning of March 16, 1996, a Mount Vernon Police Officer stationed inside a surveillance van observed the defendant sell two plastic bags of crack cocaine to another individual. Immediately after the transaction was completed, officers assigned to backup units arrested both the defendant and the purchaser, recovering the two bags of cocaine. The defendant was subsequently indicted on charges, among others, of criminal sale and criminal possession of a controlled substance in the third degree.

During jury selection, the Trial Judge engaged in an *ex parte* conversation with the defense counsel concerning whether the defendant would accept a plea agreement. On the following day, when it became clear that the defendant would not consent to a plea agreement, the prosecutor and the defense counsel had an off-the-record sidebar conference with the Trial Judge to discuss the possibility that the defendant would seek a non-jury trial. According to the Trial Judge, during this sidebar conference the defense counsel asked the court whether it would consider setting a sentencing cap if the defendant waived his right to a jury trial. The court agreed that if a nonjury trial was conducted, she would impose a sentence of no greater than five to fifteen years. The court deemed this a "reasonable" sentence because the People had offered a sentence of four and one-half to nine years if the defendant pleaded guilty. Immediately after the sidebar conference, the defendant signed a written waiver of his right to a jury trial in open court.

Later that day, the prosecutor asked the Trial Judge to recuse herself because she had held "an *ex parte* communication with a defense attorney yesterday regarding a disposition of this matter." Although the prosecutor suggested that the possibility of a sentencing cap might have been broached during the *ex parte* conversation, both the Trial Judge and the defense counsel denied that this occurred. The defense counsel opposed the recusal application, commenting that while some of the court's pretrial rulings had not been in her client's favor, the court had been "extremely fair". The Trial Judge assured the prosecutor that she had "no position on this case", and directed the People to make their application in writing.

Shortly after the commencement of the trial, the People filed a written motion for recusal. During a conference on this issue, the defense counsel expressed concern over whether or not she should join in the application because she had been accused of improper conduct. In response, the Trial Judge commented that she had told both the defense counsel and the prosecutor that the People "looked to have a rather strong case", but that she did not "have an initial position on this case", and was "trying to be as fair as possible to both sides". However, the Trial Judge then suggested to the defense counsel that it might be in her best interest to join in the recusal application and start with a "cleaner slate". The Trial Judge remarked that while she might have a reasonable doubt as to the defendant's guilt if the "case does not come in as well as it should come in", the allegations of bias leveled by the People would make it "hard to find your defendant not guilty". Despite the court's

comments, the defense counsel ultimately decided to continue to oppose the recusal application, stating that the prosecutor was using "bullying tactics" to force a recusal and mistrial. The defense counsel also asserted that the People's motion was "a front" to attack the court for making rulings "that can be construed as being not adverse" to the defendant's interest. The prosecutor subsequently decided to withdraw his recusal motion because of his concern that double jeopardy principles would bar a retrial.

At the conclusion of the trial, the defendant was convicted on all counts of the indictment. On appeal, he now contends that the judgment should be reversed because the Trial Judge's statements indicated that she could not be fair and impartial toward him. Although we are mindful that the Trial Judge's conduct was not ideal, and respectful of our dissenting colleague's view, we do not feel that reversal is warranted under the unusual circumstances of this case.

Generally, "[r]ecusal, as a matter of due process, is required only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion * * * or where a clash in judicial roles is seen to exist" (*People v Alomar,* 93 NY2d 239, 246). Here, however, no such interest on the part of the Trial Judge was shown, and thus she had no due process obligation to *sua sponte* recuse herself from this trial.

Furthermore, it is well settled that absent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of whether recusal is warranted by the appearance of partiality, and this discretionary decision is within the personal conscience of the court (*see, People v Moreno,* 70 NY2d 403, 405-406). Since this sensitive decision is entrusted in the first instance to the Trial Judge, considerable deference should be accorded to his or her exercise of discretion. In this case, the Trial Judge's decision not to recuse herself cannot be deemed improvident. Contrary to the defendant's contentions on appeal, there is no indication that the Trial Judge was actually biased against him or that her ability to be impartial was compromised by the People's recusal motion or a conversation she had with the Administrative Judge which was apparently prompted by a complaint from the District Attorney's Office. In this regard, we note that the lengthy on-the-record discussions between the court and the attorneys, when read in context, do not indicate bias. While the Trial Judge advised the prosecutor and the defense counsel of her opinion that the People appeared to have a strong case, this was a realistic assessment

based on the Trial Judge's knowledge that the defendant was arrested minutes after a narcotics officer saw him engage in a drug sale. Despite the apparent strength of the People's evidence, the Trial Judge advised the attorneys that she had no position on the case, and that she wished to be fair. In addition, the Trial Judge noted that if the case was not presented as well as it should be, there was a possibility that she would have a reasonable doubt as to the defendant's guilt. The Trial Judge's comments as a whole do not indicate that the outcome of the case was a "foregone conclusion", as the dissent maintains, or that she believed herself bound to find the defendant guilty because of the prosecutor's allegations that she exhibited a pro-defense bias. Moreover, the record does not reflect any instance in which the Trial Judge displayed prejudice against the defendant (*see, People v Gallagher,* 158 AD2d 469; *People v Fischer,* 143 AD2d 1036; *see also, People v Blasini,* 253 AD2d 886).

It is also important to note that the issue of recusal was raised in response to the prosecutor's perception that the Trial Judge was not being fair to the People, and had improperly agreed to a sentencing cap during the *ex parte* conversation with defense counsel. In opposing recusal, the defense counsel repeatedly maintained that the court's pretrial rulings had been fair, even when they did not favor her client, and urged the court not to be bullied into recusal and a mistrial. It is therefore clear that the defense counsel's vehement opposition to recusal and a mistrial was a strategic decision, made with the knowledge that even if her client was found guilty, his maximum sentencing exposure would be five to fifteen years, which is not substantially greater than the four and one-half to nine year statutory minimum which the defendant, as a second felony offender, could have received for the Class B offense of criminal sale of a controlled substance in the third degree. Having knowingly agreed to a nonjury trial with a promised sentencing cap, the defendant waived any claim that the Trial Judge's failure to recuse herself was improper (*see, People v Hines [Stephen],* 260 AD2d 646), and it is disingenuous at best for him to now argue that the court's actions deprived him of a fair trial.

Furthermore, the defendant was not prejudiced by the fact that the Trial Judge conducted a *Sandoval* hearing (*see, People v Sandoval,* 34 NY2d 371), and ruled on an application to limit testimony concerning the fact that the officer who observed the defendant during the drug sale was familiar with him. Indeed, it has been recognized that unlike a lay jury, a Judge " 'by

reasons of * * * learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and making an objective determination' based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision" (*People v Moreno,* 70 NY2d 403, *supra*, at 406, quoting *People v Brown,* 24 NY2d 168, 172). It is for this reason that the courts have repeatedly held that there is no prohibition against the same Judge conducting a pretrial hearing as well as the trial (*see, People v Moreno, supra*; *see also, People v Davenport,* 173 AD2d 633, *cert denied* 502 US 1106).

Considering all of these factors, we are convinced that the defendant was not prejudiced by the Trial Judge's failure to recuse herself.

The defendant's remaining contentions are without merit. Krausman, J. P., Feuerstein and Smith, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment and grant a new trial with the following memorandum:

I respectfully dissent and vote to reverse the judgment and grant the defendant a new trial in the interests of justice (*see,* CPL 470.15 [3] [c]).

The defendant was arrested on March 16, 1996, in Mount Vernon, Westchester County, when an undercover police officer, using binoculars, observed him passing two clear plastic bags, allegedly containing crack cocaine, to a woman and receiving cash in return. The woman who received the bags placed them in her mouth and was shortly thereafter arrested, as was the defendant.

After the defendant's arraignment and indictment, *Mapp (see, Mapp v Ohio,* 367 US 643) and *Wade (see, United States v Wade,* 388 US 218) hearings were held, after which the hearing court (Cirigliano, J.), denied those branches of the defendant's omnibus motion which were to suppress identification testimony and physical evidence. The hearing court granted the defense counsel's application to inspect the surveillance van from which the drug sale was observed so that the defense counsel could question witnesses as to whether the police could observe the drug transfer from their vantage point in the van. On appeal the defendant does not challenge any of these rulings.

Immediately before the commencement of the trial before a different Judge, the court participated in an *ex parte* conference with the defendant's counsel.

The prosecutor was alerted to the court's *ex parte* negotia-

tions with the defense counsel and requested that the court recuse itself. The court directed the prosecutor to formalize the recusal motion in writing but inexplicably commenced the trial with opening statements and the call of the prosecutor's first witness prior to a decision on the motion. The testimony of the officer was interrupted and the trial adjourned to the following day to permit the court to consider the prosecutor's written motion for recusal.

Argument by counsel and responses by the Trial Judge on the recusal issue and the defendant's waiver of a jury trial continued at length, but the court's dilemma could be summarized by its telling comment relating, *inter alia*, to the defendant's refusal to join the People's motion for recusal and a mistrial. The court stated: "Now given the conversation that I had with the Administrative Judge and from some of the claims that are false that have been made in this Court, I'm going to find it hard to find your defendant not guilty."

This case is unique because it involves a plea agreement without a plea. The agreement was made *ex parte*. The defendant executed a waiver of his right to trial by jury although the allocution of the defendant regarding his waiver was inadequate (*see,* CPL 320.10 [2]).

In light of the fact that the trial court: conducted a full *Sandoval* hearing regarding the defendant's prior convictions (the defendant did not testify at the trial); ruled *in limine* as to the testimony which could be elicited from the police officer who observed the drug sale regarding his prior familiarity with the defendant; had *ex parte* communications with both the prosecutor and the defense counsel; and in light of the sentence promised and imposed, it was impossible for the defendant to receive a fair trial. The result of the trial was a foregone conclusion. The presumption of innocence which is accorded to every defendant prior to trial did not attach to this defendant as a result of the proceedings that occurred prior to trial.

Clearly, the defendant did not receive a fair trial, nor could he have received a fair trial under these circumstances. Accordingly, the Trial Judge should have recused herself and declared a mistrial (*see,* Judiciary Law § 14; CPL 280.10).

The judgment should be reversed and a new trial ordered.