OPINION OF THE COURT
Paula J. Hepner, J.
The Court Attorney Referee to whom this case was referred,[1] submitted a report to the undersigned on January 23, 2009 recommending her recusal because she “inadvertently received information” during an “ex parte scheduling communication” with an unidentified person which “might affect her impartiality.” In her report she did not reveal the substance of the information “because it is privileged pursuant to CPLR 4503.” She relied upon Advisory Committee on Judicial Ethics Opinion 07-192 (2007) for this course of action. This ethics Opinion addressed the question of whether an ex parte communication should be disclosed to the attorneys and parties involved in a case.[2] This Opinion cannot be considered as authority for the Referee’s position that “the substance of the information received ex parte may not be revealed” to the judge charged with making a decision to confirm or reject her request “because it is privileged.” Without knowing the content of the ex parte communication in this matter and how it would affect her ability to be impartial, the court found the Referee’s report insufficient on its face and entered an order on January 28, 2009 denying recusal.
Relying on Advisory Committee Opinions 08-54 (2008) and 98-144 (1998), which hold that disclosing ex parte communica *222 tions is “generally advisable” but “is not an absolute requirement” without regard for “the content, context and [surrounding] circumstances of a particular communication,” and Advisory Committee Opinion 08-23 (2008), which discusses the factors to be considered in deciding whether to disclose the contents of an ex parte communication,® the court required that any supplemental report from the Referee contain the substantive contents of the ex parte communication. The court’s order also directed the Referee to redact that information from the papers served on counsel, in order to preserve the court’s ability to maintain the confidentiality of the disclosure and to preserve its ability to seal the record and withhold the contents of the ex parte communication from the parties and their attorneys should that become necessary.
A supplemental report and recommendation was submitted by the Referee to the undersigned on January 30, 2009.[3]
[4] The Referee stated that the petitioner father’s attorney called to ask her about the date the case was scheduled and during this conversation the attorney mentioned that she had filed an order to show cause to be relieved. According to the Referee, “ ‘immediately’ thereafter,” the father’s attorney uttered the three words comprising the ex parte communication at issue here. No
*223 further details about the circumstances, context or substance of the ex parte communication were provided in the report. The Referee commented that when she reviewed the attorney’s request to be relieved, she noticed this was not included in counsel’s affirmation of reasons supporting her request to be relieved.[5] From counsel’s statement that “she ‘is sensitive to her obligation not to disclose privileged information which might be prejudicial to Petitioner’s case,’ ” the Referee implies that this is a reference to the contents of the ex parte communication at issue. The court does not assume, as the Referee does, that this sentence encompasses the ex parte communication the petitioner allegedly made to his attorney. The court reads this sentence as an indication that petitioner’s counsel is aware of her ethical obligation when making a “disclosure adverse to [her] client’s interest,” that it “should be no greater than the lawyer reasonably believes necessary to the purpose.”[6] Had the petitioner done what was alleged in the ex parte communication, there is no reason for counsel to have omitted it from her list of reasons since she could not be sanctioned for having acted contrary to her client’s interests by disclosing it.[7]
Preliminarily, two determinations must be made before reaching the merits of the Referee’s recusal request. First, a determination must be made about whether the information disclosed by petitioner’s counsel constitutes, as the Referee contends, a “confidential communication between an attorney and his/her client” which is protected from disclosure under CPLR 4503.[8] Second, a determination must be made about whether the ex parte communication, even if not protected, may be revealed under the criteria in Opinion 08-23.
*224 The Code of Professional Responsibility provides that “[b]oth the fiduciary relationship existing between lawyer and client and the proper function of the legal system require the preservation by the lawyer of confidences and secrets” of his or her client.[9] The Disciplinary Rules define a “confidence” as “information protected by the attorney-client privilege under applicable law,” and a “secret” as “other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.”[10] In People v DePallo (96 NY2d 437, 442 [2001]), the Court of Appeals held that “[t]he intent to commit a crime is not a protected confidence or secret.” Because the information disclosed in counsel’s ex parte communication with the Referee does not reveal a confidence or a secret, this ex parte communication enjoys no privilege under CPLR 4503. Inasmuch as counsel’s ex parte communication to the Referee sets forth no specific allegations of fact and simply expresses a conclusion drawn from something her client did or said, it is difficult to conclude that disclosing the information would pose a risk of dangerous consequences'to an innocent individual. Even if it did, disclosing the contents of the ex parte communication to counsel and the parties would appear to be consistent with Advisory Committee Opinion 05-78 (2005) for the protection and safety of the attorney.* [11] Moreover, since the ex parte communication is the foundation for the Referee’s recusal, disclosure of its contents is essential to the analysis of her request to be relieved.
Section 4301 of the Civil Practice Law and Rules provides that “[a] referee to determine an issue or to perform an act shall have all the powers of a court in performing a like function; but he shall have no power to relieve himself of his duties.” *225 It would appear from the case law, that the same standard of evidence and burden of proof, which apply to recusal of a judge, apply equally to a referee.[12] Thus, in the absence of “any of the statutory disqualifications set forth in Judiciary Law § 14,”[13] or “proof of bias or prejudice” (Schreiber-Cross v State of New York, 31 AD3d 425 [2d Dept 2006]), or “personal knowledge of disputed evidentiary facts concerning the proceeding,”[14] the judge or referee “is the sole arbiter of [his or her] recusal” (People v Moreno, 70 NY2d 403, 405 [1987]). The undersigned has found no legislative history to explain this anomaly. Consequently, courts must decide whether a referee’s request for recusal should be granted.
The ex parte communication upon which the Referee based her request for recusal is the statement from petitioner’s attorney, “He threatened me.” The Referee finds this ex parte communication relevant to both the attorney’s application to be relieved and the petitioner’s request for visitation. In her report she explains that “if an attorney is in danger due to a threat by a client” and if “the petitioner made a threat against his attorney,” this “could be an indication that petitioner has violent tendencies” which “would have a negative bearing on petitioner’s request for expanded visitation.” Because of this, the Referee reports that she “cannot disregard this information in making decisions in this matter.”
In analyzing the Referee’s attempt to use this ex parte communication as a justification to be relieved of her duties in this case, three assumptions are immediately apparent. First, without any factual support for her conclusion, the Referee *226 characterizes the disclosure as “inadvertent” when she might equally have questioned it as a calculated strategy to secure her removal from the case,[15] particularly in light of this court’s prior decision denying petitioner father’s attorney’s order to show cause to recuse her.[16] Second, having knowledge of only a vague and unparticularized statement, the Referee speculates that the attorney could be “in danger due to a threat by [her] client.” Without knowing more about the petitioner father’s exact words or actions, his tone and behavior at the time, as well as the context surrounding his words or actions, any independent, objective assessment of the seriousness of the petitioner father’s conduct or the reasonableness of counsel’s reaction to it cannot be made. Third, without any factual basis in the record, the Referee hypothesizes from counsel’s nebulous remark that the petitioner could have “violent tendencies.” Having presided over this case since its inception in 2002 and having seen and observed the parties over innumerable court appearances between 2002 and the present,[17] for the Referee to conjecture that the petitioner “may have violent tendencies” because of this statement is difficult to comprehend.
During litigation, it is all too common an occurrence for parties to act out in agitated, aggressive, insubordinate, hostile and disruptive ways when, for example, rulings do not go in their favor, they become frustrated with the lengthy process, they misapprehend the role of their lawyer, and recognize their inability to control the proceedings. When litigants resort to making threats to regain a position of power, these threats can span a range from the perilous (“I’ll kill you”) to the persistently annoying harassments (“I’m going to report you to the disciplinary committee and ruin your career”; “I’ll make your life miserable”; “I’ll have you on Fox 5 tonight”). What some people *227 perceive as a serious threat of harm others may dismiss as an excited utterance or an intemperate outburst stemming from a lack of impulse control. Judges are routinely called upon to make these distinctions when deciding attorneys’ applications to be relieved from representing their clients or when making decisions about whether to grant, continue or modify interim visitation or custody applications.
There is a voluminous body of case law recognizing that a judge, presiding over a bench trial, “ ‘by reasons of . . . learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination’ based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision” (People v Moreno, 70 NY2d at 406, quoting People v Brown, 24 NY2d 168, 172 [1969]; People v Grier, 273 AD2d 403 [2d Dept 2000]). Judges are “presumed to have disregarded inadmissible evidence” (People v Whitehead, 305 AD2d 286, 287 [1st Dept 2003]; People v Tong Khuu, 293 AD2d 424 [1st Dept 2002]) and to have “considered only competent evidence in reaching his [or her] verdict” (People v Falu, 138 AD2d 510, 512 [2d Dept 1988]; People v Bishop, 111 AD2d 398 [2d Dept 1985]).[18] Even the Court of Appeals has recognized that “[i]n our own deliberations in this court, we are called upon to objectively consider questions of law and reverse convictions even though upon reading the entire record we are convinced of the defendant’s guilt” (People v Brown, 24 NY2d at 173). Critical to performing the judicial function is the capability to distinguish issues and make objective determinations “despite having acquired information of guilt or innocence inadmissible before a fact finder” (People v Dones, 250 AD2d 381 [1st Dept 1998]) and *228 the competence to base decisions “upon appropriate legal criteria” (People v Lamphier, 302 AD2d 864, 865 [4th Dept 2003]).
Unless the Referee knows something more about the circumstances and substance of the alleged threat than is revealed in her report, there is nothing unusual, exceptional or extraordinary about the nature or the content of the particular statement at issue in this case and nothing to distinguish it from the multitude of times this particular situation can arise in the course of a judicial career. The speculations the Referee makes about the contents of the alleged threat, to bolster her request to be relieved, are unwarranted on the facts in the record and make transparent the motivation behind her request.[19] On this record, the Referee’s request to be relieved on such tenuous and insubstantial grounds, coming seven years into the case and in the middle of trial, is misguided.
Although the Referee has failed to set forth a legal basis for recusal under the applicable statutes and case law, the undersigned has a professional obligation to “promote[ ] public confidence in the integrity and impartiality of the judiciary.”[20] Based on this record, it would not be ethically or morally responsible to retain someone on a case who harbors a bias or prejudice against one of the litigants, states he/she cannot proceed in a completely fair and impartial manner, despite knowing of this alleged threat, and render a reasoned determination confined to the admissible evidence. Therefore, in the interests of justice, the Referee must be recused.
*229 Accordingly it is ordered that the recommendation of the Court Attorney Referee is confirmed and the order of reference issued in this case is vacated.

. This decision has been edited for purposes of publication because its significance is in the legal and substantive issues it addresses and not the identity of the Court Attorney Referee involved.

. In an ex parte communication, the defendant’s former attorney sent a letter advising the judge presiding over the defendant’s criminal trial that his client “committed perjury while testifying at an administrative hearing about facts that are also at issue” in the criminal case. The Opinion concluded that
“whether the judge must disclose [the ex parte communication] depends on the nature of the information conveyed. To the extent the letter includes information about disputed evidentiary facts, or other information addressing the merits of the pending case, the judge should disclose it to the parties and their attorneys. The judge should not, however, disclose any information he/she concludes is privileged pursuant to CPLR § 4503 — i.e., information which the judge deems to be a confidential communication between an attorney and his/her client” (citations omitted).

. In an ex parte communication, the defendant’s relative sent a letter to the judge describing a series of incidents involving the defendant that, in the judge’s view, “would definitely pertain to the merits of whether or not [the defendant’s] probation should be revoked.” Advisory Committee Opinion 08-23 suggested three ways to proceed depending on the circumstances:
“(1) If the judge has reason to believe that dangerous consequences to an innocent individual may result if he/she discloses the letter, and the judge also determines, in good conscience, that he/she can decide the pending issues without considering the ex parte information, then the judge need not disclose it to the parties or their counsel.
“(2) If the judge concludes that disclosing the [information] does not pose a risk of dangerous consequences to an innocent individual, he/she should disclose the letter.
“(3) If the judge has reason to believe that dangerous consequences to an innocent individual may result if he/she discloses the letter and the judge cannot disregard the letter when re-sentencing the defendant, then in lieu of disclosure, the judge should exercise recusal without disclosing his/her reason for doing so.”

. The petitioner father’s attorney was identified in this report as the source of the ex parte communication. Upon receiving a redacted copy of the Referee’s supplemental report, she wrote a letter to the Referee asking for an un-redacted one. The Referee informed counsel that she should make the request to the undersigned, which the father’s attorney has not done.

. Counsel gave three reasons in her motion to be relieved from representing the petitioner: that her client “has advised [her] that he no longer has confidence that [she] is currently working on his behalf or in his best interests,” (affirmation of Susan Ianelli, Esq. ¶ 3); that he “distrusts [her] representation of him in this matter” (affirmation of Susan Ianelli, Esq. ¶ 5); and that there is an irreparable breakdown in the attorney-client relationship as petitioner and counsel are unable to communicate “effectively and meaningfully” (affirmation of Susan Ianelli, Esq. ¶ 6).

. Code of Professional Responsibility EC 4-7.

. Under Code of Professional Responsibility EC 4-7, “[a] lawyer is afforded the professional discretion to reveal the intention of a client to commit a crime and the information necessary to prevent the crime and cannot be subjected to discipline either for revealing or not revealing such intention or information.”

. Advisory Comm on Jud Ethics Op 07-192.

. Code of Professional Responsibility EC 4-1.

. Code of Professional Responsibility DR 4-101 (a) (22 NYCRR 1200.19 [a]).

. In Opinion 05-78, “[a]n attorney advised a presiding judge that during a conversation with his/her client, the client threatened to kill both the judge and an attorney representing another party to a proceeding.” The Advisory Committee concluded,
“In the present inquiry, although the source of the communication is a party’s attorney, the nature of the information conveyed is such that it is not privileged. That the information conveyed by the attorney is adverse to his/her client’s interests and concerns the safety of the judge as well as another attorney involved in the case warrants disclosure on the record and in the presence of all parties and their attorneys.”

. In Matter of Taja K. (51 AD3d 1027 [3d Dept 2008]), the Appellate Division affirmed a Family Court judge’s decision denying a litigant’s motion to have a court attorney referee relieved and held that “[a] mere allegation of bias is insufficient to require disqualification of the court attorney referee.” In this case, the court attorney referee did not indicate an inability to continue on the case. In Polidori v Societe Generate Group (57 AD3d 369 [1st Dept 2008]), the Appellate Division held that “[t]he Special Referee’s occasional expressions of frustration with counsel’s conduct” were insufficient to show “bias” to warrant removal of referee.

. Judiciary Law § 14 (“Disqualification of judge by reason of interest or consanguinity”) provides that
“[a] judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree.”

. Code of Judicial Conduct Canon 3 (E) (1) (a) (ii); Rules Governing Judicial Conduct (22 NYCRR) § 100.3 (e) (1) (a) (ii).

. Advisory Committee Opinion 99-78 (1999) involved a respondent in a custody case who, on two occasions, left documents at the home of the Family Court judge’s sister and telephoned the judge’s mother several times. The Opinion reminds judges who are deciding whether to recuse themselves or not that “among the circumstances to be considered by the judge is whether recusal might be deemed an encouragement for litigants to engage in extreme actions in order to secure the removal of a judge from a case.”

. Decision and order of Aug. 27, 2008.

. The initial custody petition was filed by the respondent on March 6, 2002 and the case was referred to the Referee in July 2002. In 2003 final orders of custody and visitation were entered. Since then she has presided over supplemental A to M which have been filed by the parties continuously from 2005 to the present. In addition to the instant matter, the parties have been before the Referee on approximately 50 scheduled appearance dates.

. The magnitude and complexity of the issues that judges presiding over bench trials are expected to disregard include: knowledge of defendant’s prior criminal record and evidence of his involvement in the crimes charged (Moreno), evidence of a coerced confession improperly admitted after it had been suppressed (Brown), denial of a recusal motion premised on the judge’s prior involvement in plea negotiations (Grier), knowledge of a guilty plea entered and then withdrawn (Whitehead), evidence of defendant’s prior burglary conviction, improperly admitted on the issue of identity (Khuu), evidence of a suggestive showup identification which had been suppressed (Falu), personal knowledge of the crime scene and surrounding area (Bishop), knowledge of the defendant’s prior criminal record (People v Dones, 250 AD2d 381 [1st Dept 1998]), improperly elicited opinion from an expert witness about the victim’s credibility (People v Lamphier, 302 AD2d 864 [4th Dept 2003]), and lawsuits filed by the defendant against the judge presiding over the criminal trial (United States v Blohm, 579 F Supp 495 [SD NY 1983]; United States v Bray, 546 F2d 851 [10th Cir 1976]).

. This is an extremely old case with very litigious parties. In the five years this case has been pending before the Referee, 11 of the 13 supplemental have not been decided. On May 28, 2008, the undersigned issued an order directing the Referee to hear and report on petitioner’s order to show cause (supplemental L) alleging the respondent is in violation of a court order dated July 10, 2003 and the order to show cause (supplemental M) alleging the respondent is in violation of a court order dated March 21, 2007. The Referee issued a report and recommendation regarding the March 21, 2007 order but did not address the July 10, 2003 order. On August 25, 2008, to achieve compliance with this court’s order of May 28, 2008, the undersigned calendared petitioner’s two motions for contempt for oral argument before the Referee on September 9, 2008 and, if necessary to resolve disputed issues of fact, to schedule a hearing forthwith and at its conclusion, prepare a report with recommendations and submit it to the undersigned along with transcripts and exhibits from the proceedings as required by CPLR 4320 (b). To this date, the Referee has not submitted a report with recommendations on these two contempt proceedings.

. Code of Judicial Conduct Canon 2 (A); Rules Governing Judicial Conduct (22 NYCRR) § 100.2 (a).