OPINION OF THE COURT
Paula J. Hefner, J.
Before the court is an order to show cause filed by the petitioner on March 20, 2009 which questions whether one of the limitations on the Referee’s authority contained in CPLR 4301 means that only a judge may hear and decide an application to recuse a referee or whether a referee has jurisdiction to hear and determine, in the first instance, if recusal is appropriate. Section 4301 of the Civil Practice Law and Rules provides that “[a] referee to determine an issue or to perform an act shall have all the powers of a court in performing a like function; but he shall have no power to relieve himself of his duties.” Based on this statute, the petitioner argues that “there appears to be no exceptions to this limitation of the court’s power, and as such only a Judge can rule upon an application to recuse the referee.”[1]
Since this case began, four motions have been made to recuse the court attorney Referee to whom this matter was referred. According to the court file, the first such application was made *598 before the Referee on August 10, 2005 and denied by her on August 22, 2005. The second motion seeking to have this matter “referred to a new referee and/or revoking the consent for this Court to hear this matter as this Court cannot be impartial” was made before the Referee on January 14, 2008 and denied by her in an order issued on May 1, 2008. On December 3, 2008, petitioner filed a third motion for recusal which she alleges the Referee refused to sign.[2] On March 17, 2009, the petitioner filed a motion before the Referee requesting renewal and reargument of her prior motions for recusal on the grounds that if “a referee cannot relieve himself of his duties” she was without jurisdiction to decide the prior motion and should have “prepared a ‘hear and report’ decision for the court, obtained the transcripts and referred the matter to a judge,” citing Matter of Daniel D. v Linda C. (24 Misc 3d 220 [Fam Ct, Kings County 2009]). The petitioner then filed the fourth motion before the undersigned on March 20, 2009 to stay the proceedings before the Referee “pending the determination of the motion filed which sought to renew and reargue the orders to show cause dated January 14, 2008 and December 3, 2008 insofar as this Court did not have the jurisdiction to decide the part of the motion seeking her recusal from the matter.” In support of her position, the petitioner cites Daniel D. v Linda C. (24 Misc 3d 220 [2009]) and Matter of Norbert E. v Margaret J. (Fam Ct, Queens County, Jan. 8, 2008, Salvatore J. Modica, J.). Neither case addresses the question raised in this matter and their factual contexts are not analogous.[3]
The respondent maintains that petitioner’s motion to renew and reargue her two prior orders to show cause must first be heard by the Referee, on notice to all the parties, who should *599 review the evidence and make a recommendation.[4] The respondent disagrees with petitioner’s reading of the statute and argues that “there is nothing in the language of CPLR 4301 that precludes the referee from deciding a motion to recuse.” He opposes granting the motion because the petitioner is “confusing the referee’s lack of power to relieve himself of his duties with the jurisdiction to decide if recusal is appropriate” and relies on Matter of Scinta v Scinta (129 AD2d 262 [4th Dept 1987]) and Clark v Krug (46 AD3d 1460 [4th Dept 2007]) for the proposition that “submission of an issue to a referee affects only the mode of trial, not the jurisdiction of the court, only the jurisdiction of the judge.”[5] The respondent also cites Daniel D. as support for his reading of the statute because in that case, the referee heard the matter first and submitted a report to the court recommending her own recusal.
The leading Second Department case to analyze the relationship between a judge and a referee is Lipton v Lipton (128 Misc 2d 528, 530 [Sup Ct, Nassau County 1985], affd 119 AD2d 809 [2d Dept 1986]). Citing Buxbaum v Buxbaum (118 Misc 2d 348 [Sup Ct, Kings County 1983]) and Weinstein-Korn-Miller, NY Civil Practice ¶ 4001.04, the trial court held that
“[r]eferees properly assigned to determine issues in a civil case have powers identical to those of a Justice of the Supreme Court . . . “Since the determinations of a judicial hearing officer are equivalent to those of a Justice of the Supreme Court, this court cannot interfere with his substantive decisions concerning the issues referred to him. This court can, however, make a determination concerning the jurisdiction or authority of the judicial hearing officer.” (128 Misc 2d at 530-531; accord Harris v Harris, 140 Misc 2d 275 [Sup Ct,
*600 Nassau County 1988]; Piscopo v Piscopo, NYLJ, May 12, 2009, at 28, col 1 [Fam Ct, Westchester County 2009].)
This is so because the authority of a “referee [or judicial hearing officer] ... is derived from the order of reference and is limited by its terms as well as by the statutes and rules authorizing the particular reference” (Weinstein-Korn-Miller, NY Civ Prac ¶ 4311.03). In Lipton (128 Misc 2d at 531), the trial court held that
“[w]hen the particular powers or jurisdiction of the judicial hearing officer have been circumscribed by the order of reference, there should be no departure from the terms of the order, even at the request of both parties, without court approval. (4 Weinstein-Korn-Miller, NY Civ Prac 1Í 4311.03.) The order of reference necessarily both prescribes and limits the authority and function of the referee or judicial hearing officer.”
A judicial hearing officer “ ‘has no power beyond that limited in the order of reference’ ” (Fernald v Vinci, 302 AD2d 354, 355 [2d Dept 2003], quoting L. H. Feder Corp. v Bozkurtian, 48 AD2d 701, 701 [2d Dept 1975]) and one “who attempts to determine matters not referred to him by the order of reference acts beyond and in excess of his jurisdiction” (Lipton, 128 Misc 2d at 531).
Guided by these principles, an analysis of three components is required in order to reach a decision regarding the referee’s authority with respect to a recusal motion: the order of reference, the governing statutes and rules, and the case law interpreting them. Having done this analysis this court concludes, as the trial court did in Lipton, that the Referee has the authority to entertain and decide a recusal motion for the following reasons. First, the order of reference in the instant matter gave the Referee broad powers to “hear and determine . . . the issues in the above-entitled proceeding as well as any future supplemental and violation petitions,” providing the parties and/or their attorneys execute a written stipulation consenting to the reference, which they did.[6] The order of reference did not set any limitations on the Referee’s authority or exclude particular types of applications from her purview such as a motion for recusal.
*601 Second, the permissible scope of authority for a referee or judicial hearing officer is set forth in article 43 of the CPLR. Three limitations imposed on that authority are defined by statute: a referee may not relieve himself of his duties, a referee may not appoint a successor and a referee may not hold anyone in contempt other than a witness before him/her.[7] Under the rules of statutory construction, “[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.”[8] Courts are to ascertain the legislative intent “from the words and language used” and construe “the statutory language . . . according to its natural and most obvious sense, without resorting to an artificial or forced construction”[9] and, “[w]here words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation. ’ ’[10] In carrying out their function, courts are to give statutes “a reasonable construction, it being presumed that a reasonable result was intended by the Legislature.”* [11] While the Comment to these rules of statutory construction recognizes the
“imperfections of human language and [that] the variant modes of expression in use among different individuals render it practically impossible [to make] the language of any general legislative provision ... so certain and explicit as not to admit of a doubt as to its proper interpretation or legal construction . . . [the rules of statutory construction were created] to render assistance [to the courts] in determining the legislative intent and [w]hen the meaning of a statute is clear, construction is unnecessary.”[12]
Under these rules, “[t]he starting point in any case of [statutory] interpretation must always be the language itself, giving effect to the plain meaning thereof’ (Matter of William C., 64 AD3d 277, 283 [2d Dept 2009]).
Resolution of the question before the court does not “tread the quicksand that surrounds a case in which less than definitive statutory language requires a choice among differing *602 interpretations, the resolution of which, in turn, compels a choice among differing canons of construction” (Zaldin v Concord Hotel, 48 NY2d 107, 113 [1979]). As the Court of Appeals held in Zaldin, “when ... a statute is free from ambiguity and its sweep unburdened by qualification or exception, we must do no more and no less than apply the language as it is written” (at 113). The language in CPLR 4301 is clear, expresses the legislative intent without ambiguity, and sets forth concise and reasonable limits which require no interpretation. Petitioner’s interpretation of the prohibition against a referee from relieving himself of his duties, as a restriction to hearing a motion addressed to that issue, is contrary to the plain language of the statute and its history. The limitation on the power of the referee provides for judicial oversight of a referee’s decision to relieve himself in order to protect litigants from overreaching by the private lawyers who were designated to serve in this capacity when the use of referees first began (Ament v Schubert Piano Co., 172 App Div 423 [1st Dept 1916]; Robinson v Ball, 187 App Div 799 [1st Dept 1919]).
Third, recusal is statutorily required when any of the factors set forth in Judiciary Law § 14 is found to exist[13] or when a trier of fact’s “impartiality might reasonably be questioned.”[14] Absent a reason enumerated in Judiciary Law § 14, case law has held that recusal is a “discretionary decision . . . within the personal conscience of the court” (People v Moreno, 70 NY2d 403, 405 [1987]; People v Smith, 63 NY2d 41, 68 [1984]; Eisenstadt v Eisenstadt, 305 AD2d 535 [2d Dept 2003]). If, as the case law holds, a “Trial Judge is the sole arbiter of recusal” (People v Moreno at 405), it stands to reason that a referee should be as well, at least to the extent of being the first to assess the claims upon which recusal is based, evaluate the evidence and have the opportunity to refute the allegations (Lipton v Lipton, 128 Mise 2d at 535). The interests of judicial economy require no less since the referee is familiar with the questions involved and would be in the best position to make a prompt disposition of the matter (Stephen v Zivnostenska Banka, Natl. Corp., 24 AD2d
*603 852 [1st Dept 1965]). If the referee finds there is no legal basis for recusal under CPLR 4319, the decision of the referee “shall stand as the decision of a court.” As this court would have no authority to review the decisions of any other justice of coordinate jurisdiction, it has no authority to review the substantive decisions of a judicial hearing officer or referee (Lipton, 128 Mise 2d at 534). The petitioner’s recourse lies in an appeal to the Appellate Division.
However, the analysis does not end here. Two ancillary questions arise from the petitioner’s request to renew and reargue her January 14, 2008 motion which included an application to “refer the matter to a new referee and/or revok[e] the consent for this Court to hear the matter as the Court cannot be impartial.”[15] Though abstrusely pleaded, it is, in essence, a motion to remove the court attorney Referee on the grounds that she is biased and unable to assess the evidence in a fair and impartial manner.
The basis for the petitioner’s assertion that the Referee is not impartial and must be removed is: (1) “because the referee is to an unknown ‘degree’ an observant Jew,” (2) she assigned “an orthodox Jew attorney to be her son’s guardian ad litem . . . who was not scheduled to pick up cases that day” for the purpose of “determining if the Director of CLC, could continue to represent the child,” (3) she permitted the guardian ad litem to hand select an attorney to replace the Director of Children’s Law Center as the child’s attorney, (4) she permitted the child to continue “to have two lawyers, despite her referral to the child as an intelligent young man without disability on numerous occasions,” (5) she is “sanctioning the child going to a more orthodox school than that originally recommended,” (6) she “has handled the mother’s emotional expressions in court by threatening to throw her out of the courtroom,”[16] (7) she “told the father and the attorney for the child that if indeed [she] was correct, they had better file papers,” (8) she permitted “Agudath Israel of America [17] to intercede in the matter seeking the appointment of themselves, as Law Guardian for the child, or to *604 have the Director of the Children’s Law Center removed from the case based on the statements that [the child] felt that she was not advocating for his wishes,” (9) she permitted the new attorney for the child to “substitute his judgment” for the best interests of the child although the child is now 17 years old,[18] (10) despite an order of the Supreme Court dated January 25, 2000 giving sole custody to the petitioner, which was never challenged by the respondent, the petitioner’s decisionmaking and judgment regarding the child’s education should have governed yet the Referee inappropriately issued “orders permitting the child to be enrolled in an orthodox school in Baltimore without [the mother’s] consent,”[19] and (11) the Referee “engaged in an inappropriate, judicially activist manner . . . [by] . . . actively encouraging the father to file a petition since it was unclear that an open petition still existed.”[20]
In addition to the case law on recusal, there are judicial precedents pertaining to the right of a litigant to make a motion to remove a referee and terminate his/her authority. Clearly, a referee is subject to removal at the pleasure of the court (Ford v Ford, 53 Barb 525, 35 How Prac 321 [Sup Ct, St. Lawrence County 1868]; see generally Matter of Baumann, 234 NY 555 [1922]) and referees have been removed when a party can demonstrate s/he had a financial interest in the outcome of the case (Devlin v City of New York, 7 Daly 466 [NY CP 1878]; Ament v Schubert Piano Co., 172 App Div 423 [1916]; Topia Min. Co. v Warfield, 71 Misc 175 [Sup Ct, NY County 1911]). Nonetheless, a referee should not be removed for less than “good and substantial reasons” (Lipton, 128 Misc 2d at 535), nor should a referee be removed in the absence of a showing that s/he has “fixed and settled opinions as of the law and facts,” a suggestion of “partiality, unfairness or misconduct” (Klein v Continental Ins. Co., 17 NYS 218, 219 [3d Dept 1891]; Smith v Dunn, 91 App Div 200 [1st Dept 1904]); “or any other acts of misconduct calculated to bias or influence . . . or to prejudice either party” (Goldberger v Manhattan Ry. Co., 3 Misc 441, 443 [NY Super Ct 1893]); or “some substantial legal ground calling for the exercise of the summary power of discipline” (Shine v Fitzgerald, 14 NYS2d 169, 172 [Sup Ct, Bronx County 1939]); and should be *605 “condemned] and remove[d] . . . only when at fault and guilty of misconduct befitting the punishment inflicted” (Goldberger v Manhattan Ry. Co., 3 Misc 441, 444 [1893]). While the petitioner has attempted to “point to an actual ruling which demonstrates bias” (Yannitelli v Yannitelli & Sons Constr. Corp., 247 AD2d 271, 271 [1st Dept 1998], quoting Solow v Wellner, 157 AD2d 459, 459 [1st Dept 1990]), motions for recusal are not granted solely based upon an adverse ruling to one party (Matter of Petkovsek v Snyder, 251 AD2d 1086 [4th Dept 1998]). There must be demonstrable proof of bias to warrant a recusal (Modica v Modica, 15 AD3d 635 [2d Dept 2005]). The petitioner makes many accusations of prejudice against her, but offers no citations to the transcripts of the proceedings to document the claims she is making.
Finally, there is some judicial precedent addressing applications disputing consent to an order of reference or revoking consent once given. When a party to a proceeding appears before a referee and participates in the litigation for a lengthy period of time, s/he may be deemed to have waived his/her right to object (Piscopo v Piscopo, NYLJ, May 12, 2009, at 28, col 1; Morton v Brookhaven Mem. Hosp., 308 AD2d 566 [2d Dept 2003]; Dime Sav. Bank of N.Y. v Glavey, 214 AD2d 419 [1st Dept 1995]). The petitioner has waived her right to revoke her consent to the hear and determine order of reference extant since 2005 during which time she has litigated multiple supplemental petitions annually in front of the Referee.
Accordingly, it is ordered that the motion to recuse the court attorney Referee is denied; and it is further ordered that the motion to remove the court attorney Referee is denied; and it is further ordered that the motion to revoke petitioner’s consent to the order of reference is denied; and it is further ordered that the order to show cause filed by Mr. Margolis on June 25, 2009 regarding the subject child’s summer camp and school enrollment is referred to the court attorney Referee on June 30, 2009 for a general afternoon call; and it is further ordered that the June 29, 2009 court date before the undersigned is vacated; and it is further ordered that the matter is returned forthwith to the court attorney Referee on June 30, 2009 for a general afternoon call for further proceedings.

. Affirmation in support by Brian Zimmerman, Esq., dated Mar. 20, 2009, ¶4.

. On December 17, 2008, petitioner filed a motion to have the Referee issue an order memorializing her refusal to sign the prior order to show cause. Judge Robin Sheares, to whom the December 17, 2008 motion was presented for signature, excised that relief and instructed the petitioner to renew her application on the return date before the undersigned. On December 22, 2008, the undersigned determined the order to show cause should have been filed before the Referee and sent the matter to her for decision.

. While the court held in Norbert E. that a recusal motion made before the referee should have been made directly to the court, the reference in that case was to “hear and report.” In Daniel D., the reference was to “hear and determine” and after the referee decided that recusal was appropriate, the court held that because the statute did not permit her to relieve herself of her duties, she would have to issue a recommendation to a judge to be confirmed or rejected. In the instant matter, the reference was to “hear and determine,” and the recusal motion was made to the Referee, who decided there was no legal basis for the request and denied it.

. Affirmation in opposition by Patrick Garcia, Esq., dated Apr. 12, 2009, at 2.

. (Affirmation in opposition by Patrick Garcia, Esq., dated Apr. 12, 2009, n 4.) In Scinta (129 AD2d at 265), the Appellate Division, in discussing the language in CPLR 4312, held that “[wjhere a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions” (citations omitted; citing McKinney’s Cons Laws of NY, Book 1, Statutes § 213, at 372-373). In Clark (46 AD3d at 1460), the appellate court did not reverse the trial court for denying a motion to disqualify a referee and held that “ [although the mandatory recusal of a judge deprives that judge of jurisdiction, thereby rendering all of his or her decisions and orders null and void, the disqualification of a referee does not affect the jurisdiction of the court” (citations omitted).

. Orders of reference to hear and determine from Honorable Jane Pearl dated May 23, 2005 and February 27, 2006.

. CPLR 4301.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 92.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 94.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 76.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 143.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 91, Comment.

. These factors are: where the judicial officer is “a party, or in which [s/he] has been attorney or counsel, or in which [s/he] is interested, or if [s/he] is related by consanguinity or affinity to any party to the controversy within the sixth degree.” (Id.) As a matter of due process, “[r]ecusal... is required only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion” (Levi v Levi, 46 AD3d 520, 521 [2d Dept 2007], quoting People v Alomar, 93 NY2d 239, 246 [1999]).

. 22 NYCRR 100.3 (E) (1).

. Order to show cause filed Jan. 14, 2008, at 1, III.

. Affirmation in support by Brian Zimmerman, Esq., dated Mar. 20, 2009,112.

. The petitioner asserts that the Web site for Agudath Israel of America indicates that the organization “is part of the world movement of Agudath Israel, which was founded in 1912 to mobilize Torah-loyal Jews for the perpetuation of authentic Judaism.” (Affirmation in support by Brian Zimmerman, Esq., dated Jan. 14, 2008,11 3.)

. Affirmation in support by Brian Zimmerman, Esq., dated Jan. 14, 2008, 11 5.

. Affirmation in support by Brian Zimmerman, Esq., dated Jan. 14, 2008, U 1.

. Reply affirmation by Brian Zimmerman, Esq., dated May 11, 2009,1Í 5.