*972 OPINION OF THE COURT
Thomas F. Liotti, J.
The defendants are charged with violations of local laws in that it is alleged that they illegally conducted a retail business for the manufacture of bathing suits and accessories out of their basement and engaged in construction and alterations therein without obtaining building and electrical permits.
The defendants have appeared before this court pro se. They were represented by counsel until recently when their attorney asked to be relieved. That application was granted. Thereafter, the defendants appeared in court pro se, by Carmela Cardoza. She had not appeared in the matter previously. At her first appearance she asked to make some introductory comments, wherein she stated that she was not asking this Judge to recuse himself and stated that she felt he “could be fair.” In her introductory comments she stated that her husband, an attorney, had been my opponent for Village Justice in 1991.1 ran unopposed in 1995 and I was reelected to a second four-year term.
The court is writing this decision to address two issues. The court raises these questions sua sponte. First, does the defendant’s reference to the previous election contest with the defendant’s husband require my recusal even in the absence of a motion by the defendants? Second, is the question of recusal properly decided by the Judge whose recusal is sought?
The first question is not one of first impression.[1] Nonetheless, a question involving an appearance of impropriety may not lend itself to a per se rule. If the question involves a mandatory recusal, then little needs to be said concerning appearances of impropriety which frequently involve more subjective determinations. A per se determination, particularly when the application for recusal is to be granted, may lend itself to an early determination by the Judge whose recusal is mandated.
Section 14 of the Judiciary Law mandates recusal when the following factors exist:
*973 (1) The Judge is a party in the matter; or
(2) The Judge has been an attorney or counsel in the proceeding; or
(3) The Judge is interested in the matter; or
(4) The Judge is related by consanguinity or affinity, within the sixth degree (as defined by the statute), to any party to the proceeding.
This is not a case of mandatory recusal. {See, Code of Judicial Conduct Canon 3C; Rules of Chief Administrator of Cts [22 NYCRR] § 100.3 [E].) Rather, if anything, it is a discretionary decision. {See, People v Moreno, 70 NY2d 403 [1987].)
The second question is one of first impression. The law in both Federal and New York’s State courts is that questions of recusal are decided by the Judge whose recusal is sought. The Judge then is being asked to make a subjective determination involving his or her ability to be fair and impartial. Further, whether the Judge’s continued involvement in the case creates an appearance of impropriety is not an issue best determined by the Judge whose recusal is sought.[2] Given the present state of the law, many litigants believe that a recusal motion will *974 antagonize the Judge whose recusal is sought. They then are confronted by a conundrum of sorts — whether to make the motion or not make it. Many decide not to make it even though they may believe that the Judge’s continued involvement in the case is unfair to them or creates an appearance of impropriety. If the Judge waits for the motion to be made before acting, then the Judge is not using his or her judicial antennae, sua sponte, to ferret out or raise questions of fairness and impropriety, both in a gray area of the law relating to recusal. The malfunctioning of judicial radar in questions of recusal becomes of even greater importance with pro se defendants where the court must extend additional efforts to be fair and, indeed, raise questions, that a defense lawyer might properly present if he or she were present in the case. (See, Morris, Village, Town and District Courts in New York § 2:21.) Ultimately, the issue of recusal is not about whether a Judge’s “nose gets out of joint”, rather, it’s all about fairness to the litigants.
It should be noted that when this defendant was represented by counsel in this case, the court, sua sponte, on at least two separate occasions, inquired of defense counsel as to whether he wished that I recuse myself. On those occasions defense counsel responded in the negative. The defendants were not present on those occasions, their appearances having been waived.
An application for recusal or a desire to make such an application, by either the client or the lawyer, may cause a rift to occur between them. Courts must therefore be sensitive to these dilemmas by meeting them head on.
Lawyers too are often very reluctant to make recusal motions for fear that by doing so their clients or their clients’ interests might be jeopardized. Lawyers are also sometimes concerned that the fallout from the motion may adversely af *975 feet their ongoing relationship with the court or the Judge.[3] They reason that if the motion is made and not granted then the Judge will be angry at them for having made it and hurt them and their clients during the trial. The Judge’s upset, while stated or unstated, may be reflected in adverse rulings or judicial temperament during the balance of the proceedings. Judges may demonstrate their attitudes with a scowl or a change in the tone of their voices, matters that are all “off the record”, but which may nonetheless demonstrate their bias or otherwise affect the outcome of the proceedings. Judges must be sensitive to these duplicitous, insidious appearances that impact on the litigants and their lawyers. Judges often decide the merits of the motion for recusal alone without giving due consideration to how the making of the motion will affect them in its aftermath.
Lawyers have other concerns as well. They fear that their motion in a particular case will be viewed as an insult by the Judge and thereafter affect their ongoing relationship with that Judge or the Bench as a whole. Lawyers do correctly surmise that some Judges talk with other Judges about lawyers and litigants. Unfairly and behind the scenes, a lawyer may be made into a pariah with no chance to counter or rebut the charges against that lawyer that are bandied about in the judicial rumor mill. This kind of skullduggery by some Judges, offended by recusal motions or simply using the recusal motion as an excuse to grind their axes against lawyers, can injure or destroy a lawyer’s reputation and practice. This result can happen either by design or indirectly as a result of judicial scuttlebutt.[4]
*976 Recusal may also be used as a weapon by Judges against lawyers and their clients. When Judges recuse themselves with no application having been made by lawyers or litigants, the present state of law is that they need not comment as to their reason for doing so. (See, Laird v Tatum, 409 US 824 [1972]; IX Opns of Advisory Comm on Jud Ethics Opn 92-75; Morris, Village, Town and District Courts in New York § 16:83.) Lawyers then must attempt to explain to their clients why the Judge has recused himself or herself. Unfortunately, the impression may then be that the lawyer does not get along with Judges and that the client’s business should be taken elsewhere, perhaps to lawyers more adept at attempting to curry the favor of Judges. Recusals that are not requested by counsel or the litigants should also be considered. Is the recusal based upon a disagreement with the court that is personal rather than judicial in its origin? If the court is ordering its recusal even for somewhat routine appearances, such as arraignments or when the only application before it is to adjourn, then the motives of the Judge should be reviewed to determine whether his or her recusal is based upon legitimate concerns or whether it is made purely to attack and inconvenience the lawyer and his clients, both of which may be financially costly to them. For example, if a lawyer and client, due to a Judge’s recusal, must await reassignment to another Judge, particularly while a client is in jail awaiting a bail application, this may cause a breakdown in the attorney/client relationship. While some recusal motions are discretionary and courts should be free to decide them sua sponte, there should be some legal basis for doing so.
Recusal may send a message to other Judges that a lawyer and the Judge recusing herself or himself are enemies. Judicial colleagues may speculate as to the cause for the recusal and may then tend to side, consciously or subconsciously, with their judicial colleagues. Other lawyers may refer their business to attorneys who are not in the hot seat of judicial ire.
Exemplary Judges are careful not to blunt the advocacy of zealous lawyers. Indeed, they recognize that the strength of our system of jurisprudence has its origins in robust advocacy where lawyers and Judges challenge each other through legal argument. Notwithstanding this noble tradition, there are some Judges who use their positions and recusal as a means to threaten or embarrass their brethren on the other side of the *977 Judge’s rail, the advocates who are sworn to represent the interests of their clients at all costs, even at the risk of reprisals from some insecure members of the judiciary.
Today this court makes an unprecedented ruling which it hopes will be followed by other courts and Judges, both Federal and State. On matters of mandatory or discretionary recusal, Judges should not wait until litigants are forced into a position of either making the motion or abandoning the best interests of the client. Wherever possible they should act sua sponte and refer the matter to their Administrative Judge (if one is available) for reassignment to another Judge, just for the question of recusal. In the opinion of this court, if a Judge is passing upon a question of his or her own recusal, then he or she is creating an appearance of impropriety by that act alone. This is so, except in cases where the court is attempting to follow the per se rules relating to mandatory recusal. To provide otherwise is to allow judicial foxes to continue to watch the hen house.
Most Judges will no doubt disagree with this ruling since they cherish their powers including those which they arrogate to themselves, namely, to sit in judgment of themselves on matters of fairness, impartiality, appearances of impropriety and discretionary recusal. Yet, this decision is not about a blind adherence to the judicial status quo. It is, most respectfully, about opening the door to the robing room just ajar so that questions of fairness, impartiality and appearances of impropriety may peek in. And when they do, this Judge hopes that they will not see a smoke-filled room, but rather, a clear, majestic view of a blindfolded Lady Justice whose scales are evenly balanced.
Accordingly, this court respectfully refers this case to Honorable Elizabeth Pessala, Associate Village Justice of this court to review and consider this matter on the question of recusal. This court has just two Justices, a Village Justice and an Associate Village Justice. There is no Administrative Judge per se within this court.[5] Associate Justice Pessala may determine that there is no basis for recusal and return the case to me or she may retain the case for all purposes or she may feel some other course of action is in order, perhaps even disagreeing with this Judge’s determination that the matter should be referred to her for a determination on recusal. The defendants *978 may feel more at ease in making any motions for recusal there. In any event, the matter is, for at least the time being, transferred to Associate Justice Pessala for whatever determination she chooses to make and without specific comments from this Judge concerning this case or recusal herein.

. See Opinions 90-136 (vol VI) and 91-146 (vol VIII) of the Advisory Committee on Judicial Ethics where it was determined that a Judge need not disqualify himself merely because his opponent in the last election appears before him either as an attorney for a litigant or as a litigant. In both of those opinions the Committee determined that the Judge “need not disqualify himself unless on the particular facts the judge’s impartiality might reasonably be questioned, or if the judge has doubts whether he or she can be impartial.” (Opn 91-146, op. cit., see also, Opn 90-136, op. cit.) In this case, it is not an opponent, but rather a former opponent’s wife who is the litigant. It is also not the last election about which we are referring.

. For example, in United States v Oluwafemi (883 F Supp 885 [ED NY 1995, Gleeson, J.]), the defendant was charged with participating in conspiracies to import and distribute heroin. By his counsel, the defendant moved to disqualify the Judge and attorney representing the codefendant. The defendant requested that the Judge refer the matter of recusal to the Chief Judge. Judge Gleeson, whose recusal was sought, refused to do so. Instead, he decided that the fact that he had been a recent adversary of the defense attorney, just before the former became a United States District Court Judge, was not a basis for recusal. This was so, he found, notwithstanding the language of a brief he edited as an Assistant United States Attorney (in the same case), where he used language critical of defense counsel and the issue which he (the defense attorney) posited with the Second Circuit Court of Appeals. In his decision, Judge Gleeson referred to the critical language used in his brief as “standard fare” (at 891). The Judge also refused to recuse himself even though defense counsel had opposed his nomination to the United States District Court. Defense counsel also sought severance which was denied. When severance was denied, defense counsel moved for recusal of the Judge and of defense counsel representing the codefendant. Defense counsel alleged that the Judge and codefendant’s counsel, an attorney assigned to represent the codefendant under the Criminal Justice Act, had served together as Assistant United States Attorneys in the Eastern District of New York. They prosecuted two defendants that defense counsel later came to represent, namely, Gene Gotti and John Carneglia. The attorney for the codefendant was the Assistant United States Attorney during a third and final trial which resulted in convictions and life sentences of Messrs. Gotti and Cameglia. A few years thereafter, defense counsel for Oluwafemi became defense counsel for Gene Gotti and John Carneglia in their unsuccessful efforts to secure the sequestered names and addresses of trial jurors. Defense counsel *974 ín that case moved for the recusal of the late Judge John Bartels due to the Judge’s alleged physical infirmities from advanced age which, they contended, made it impossible for them to receive a fair hearing on their motion for names and addresses. Judge Gleeson was still an Assistant United States Attorney at that time and opposed the applications. Defense counsel had also moved for the recusal of codefendant’s counsel because he alleged that the codefendant’s counsel was advising his client to cooperate against Oluwafemi. The motions for recusal were denied and defense counsel next moved to be relieved alleging that the court could not be fair to the defendant following the motion for recusal. The court agreed and granted the motion to be relieved, assigned a Criminal Justice Act attorney to represent Oluwafemi who then also became a cooperating witness. As such, no appeal was taken from Judge Gleeson’s rulings.

. See Wise, Lawyers Discuss What to Do About Rudeness of Judges (NYLJ, Oct. 30, 1995, at 1, col 3). During a panel discussion at the Association of the Bar of the City of New York on the subject of rude Judges, United States District Court Judge (ED NY) Sterling Johnson said “lawyers are afraid to make complaints for fear of running up against the ‘thin black line,’ the judicial equivalent of the ‘thin blue line’ where police officers rally to support one another.” (Id., at 5, col 2.)
In that same panel discussion, Robert H. Tembeckjian, Deputy Chief Counsel of the Judicial Conduct Commission, made a similar point: “lawyers have an ‘economic interest in getting along and going along. They do not want to be identified as rabblerousers.’ ” (Ibid.)

. See, Matter of Mogil, NYLJ, Feb. 26, 1996, at 6, col 4 (where a County Court Judge was removed from the Bench for engaging in a needless, pernicious, vituperative campaign against a defense attorney and for repeatedly lying under oath); Matter of Mogil, 88 NY2d 749 (1996); see also, Siegel, Vendetta Against Lawyer, Both Overt and Secretive, and Lying to Commis *976 sion on Judicial Conduct, Costs County Judge His Job, 443 NY St L Dig 3 (Nov. 1996).

. The Administrative Judge for all our criminal courts in the county is Honorable Ira H. Wexner. This court is a local criminal court. (See, CPL 10.10 [3] [d], Eel.)