Matter of Ahmed v Brucha Mtge. Bankers Corp. (2024 NY Slip Op 50444(U))

[*1]

Matter of Ahmed v Brucha Mtge. Bankers Corp.

2024 NY Slip Op 50444(U)

Decided on April 16, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 16, 2024
Supreme Court, Kings County

In the Matter of the Application of Sheuli Ahmed, Petitioner,

against
Brucha Mortgage Bankers Corp., and BHC Holdings, Respondents, 
 To discharge a mortgage pursuant to RPAPL 1501, RPAPL 1921.

Index No. 505067/2024

Aaron D. Maslow, J.

This matter came before the undersigned for the purpose of reviewing a proposed order to show cause in a special proceeding forwarded by Part 72, the ex parte unit of Supreme Court, Kings County. Petitioner owns the property located at 479 East 8 Street, Brooklyn, New York, in Kings County. A prior owner in the chain of title placed a mortgage on it in the amount of $245,000, which was recorded on April 7, 1996, in the office of the City Register; the mortgagee was Brucha Mortgage Bankers Corp., a named Respondent. BHC Holding Corp. s/h/a BHC Holdings was a prior owner. Petitioner seeks to discharge the mortgage pursuant to Real Property Actions and Proceedings Law § 1921: "By all accounts, this mortgage is no longer valid, is voided or in any other way qualifies for discharge" (NYSCEF Doc No. 1, petition ¶ 14). It is further alleged:
15. No demand for payment of the mortgage has been made.
16. The statute of limitations for the commencement of an action to foreclosure the mortgage has expired.
17. Moreover, since the Judgment of Foreclosure in 1999, more than 20 years have elapsed rendering the judgment unenforceable.
(Id. ¶¶ 15-17).
Apparently, Respondents no longer operate and were dissolved by proclamation (see id. ¶¶ 24-27), which accounts for Petitioner seeking to serve Respondents by the alternate means of publication (see id. ¶¶ 27-28).
In reviewing the papers accompanying the submitted order to show cause for consideration, the undersigned noticed that Petitioner's attorney is Theodore Alatsas, Esq. (see [*2]NYSCEF Doc No. 2, affirmation). Although Attorney Alatsas and the undersigned have not been in contact for many years, I did provide legal counsel to him when he ran for public office in 2001, when I maintained an election law practice and was actively involved in Brooklyn politics. He and I thereafter collaborated on election related matters for several years; our work together ended approximately 20 years ago.
In terms of statute, the Judiciary Law provides as follows, in § 14:
A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree. The degree shall be ascertained by ascending from the judge to the common ancestor, descending to the party, counting a degree for each person in both lines, including the judge and party, and excluding the common ancestor. But no judge of a court of record shall be disqualified in any action, claim, matter, motion or proceeding in which an insurance company is a party or is interested by reason of his being a policy holder therein. No judge shall be deemed disqualified from passing upon any litigation before him because of his ownership of shares of stock or other securities of a corporate litigant, provided that the parties, by their attorneys, in writing, or in open court upon the record, waive any claim as to disqualification of the judge.
Rules of the Chief Administrator of the New York Courts governing judicial conduct are set forth at 22 NYCRR Part 100. Section 100.3 (E) sets forth guidance pertaining to disqualification. Disqualification is mandatory "where the judge's impartiality might reasonably be questioned" (22 NYCRR § 100.3 [E] [1]), including in the following instances:
• The judge has a personal bias or prejudice regarding a party.
• The judge has personal knowledge concerning of disputed evidentiary facts.
• The judge served as a lawyer in the matter.
• The judge practiced law with another lawyer who is involved in the matter.
• The judge has been a material witness in a matter.
• The judge knows that she, her spouse, or a minor child has an economic interest in the matter or in a party.
• The judge knows that he, his spouse, or a minor child has an economic interest which could be affected by the matter.
• The judge knows that she or a certain designated relative is a party, a principal of a party, or has an interest which could be affected by the matter.
• The judge knows that he or a certain designated relative is a lawyer in the proceeding or is likely to be a material witness in the matter.
• The judge has made a pledge or promise of conduct in office that is inconsistent with the impartial performance of her duties.
• The judge has made a public statement committing himself with respect to an issue or a party.
(See 22 NYCRR § 100.3 [E] [1].)
"A judge shall now allow family, social, political or other relationships to influence the judge's judicial conduct or judgment" 22 NYCRR § 100.2 [B]).
None of the grounds specified above in Judiciary Law § 14 or the New York Rules governing judicial conduct apply to the instant situation where I performed legal work for an attorney for a party to the lawsuit and we were politically active together over 20 years ago.
Having represented a party or the party's adversary in a previous matter does not ipso facto require recusal on the part of the judge (see People v Stoley, 179 AD3d 1308 [3d Dept 2020] [judge prosecuted defendant in prior matter]; People v Lerario, 43 AD3d 492 [3d Dept 2007] [judge represented defendant in prior criminal case which constituted predicate for enhanced sentencing]; People v Marrero, 30 AD3d 637 [3d Dept 2006] [judge represented defendant in prior criminal matter ten years earlier but did not recall it]).
Neither does case law mandate recusal merely due to a judge's acquaintanceship with an attorney or a witness (see Siegfried v Siegfried, 256 AD2d 23 [1st Dept 1998] [judge member of same synagogue as witness]; Ellis v Ellis, 235 AD2d 1002 [3d Dept 1997] [judge had prior social acquaintanceship with expert and previously used expert's accounting firm for tax assistance]; Mugas v Mugas, 210 AD2d 1994 [4th Dept 1994] [judge and wife met with plaintiff's counsel and counsel's wife every two or three months]; Manhattan Sch. of Music v Solow, 175 AD2d 106 [2d Dept 1991] [acquaintanceship with partner at law firm representing adjoining landowner in adverse possession action]; see also People v T & C Design, Inc., 178 Misc 2d 971 [Just Ct, Westbury 1998] [pro se litigant was spouse of judge's opponent in prior election]).
"In general, a judge is in the best position to assess whether their impartiality might reasonably be questioned in matters involving an attorney the judge knows socially" (Advisory Comm on Jud Ethics Op 21-06 [2021]). However, the New York State Advisory Committee on Judicial Ethics has issued guidance in an extensive opinion, as follows:
The Committee previously has issued a number of opinions addressing a judge's obligations when an attorney, with whom the judge has some kind of social relationship or friendship, appears before the judge. Because the Committee realizes it is difficult and time consuming for a judge to review all the existing opinions to determine how to proceed in his/her individual, fact-specific situation, the Committee takes this opportunity to consolidate and harmonize the existing opinions on this subject.
The Committee has consistently advised that in a particular proceeding, the presiding judge is ordinarily in the best position to assess whether his/her impartiality might reasonably be questioned when an attorney whom the judge knows socially, with whom the judge is acquainted, or whom the judge considers a friend appears before him/her (see Opinions 11-45; 07-26; 22 NYCRR 100.3[E][1]; cf. People v Moreno, 70 NY2d 403 [1987]). This issue is especially challenging because human relationships are so varied, fact-dependent, and unique to the individuals involved. Therefore, the Committee can provide only general guidelines to assist judges who ultimately must determine the nature of their own specific relationships with particular attorneys and their ethical obligations resulting from those relationships. When doing so, a judge should take into account such factors as the nature of his/her relationship with the attorney; the inter-relationships, if any, among and between their respective immediate and close family members; the frequency and context of their contacts; whether they or their respective family members have financial, political or other ties; and whether they or their respective family members share confidences (see e.g. Opinions 11-45; 08-166; 07-26; 06-149; 06-44).
After reviewing its prior opinions, the Committee identifies three broad categories of interpersonal relationships between judges and lawyers who appear before them in order to assist them in evaluating their relationships so as to determine what, if any, ethical obligation those relationships impose on the judge.
I. Acquaintance
The first category is acquaintance. In the Committee's view, a judge is acquainted with an attorney when their interactions outside court result from happenstance or some coincidental circumstance such as being members of the same profession, religion, civic or professional organization, etc. For example, the judge and the attorney both attend bar association meetings (see Opinion 07-126 [judge and attorney appearing in judge's court serve on a bar association elder law committee]), other professional gatherings, sporting or other school events involving their children; they patronize the same retail establishment; they see each other primarily when socializing with mutual friends, but not otherwise; they are members of the same country or golf club; or they attend the same religious services. Generally, neither will initiate social contact with the other, but they greet each other and interact cordially when they participate in common but not necessarily personally shared interests. In the Committee's view, the mere fact that a judge is acquainted with and cordial to an attorney who appears before the judge when they come into contact outside the court - even if such contacts are regular or periodic - without more, is not a reasonable basis to question the judge's impartiality (see 22 NYCRR 100.3[E][1]; Opinion 11-20; see also Opinion 09-234 [judge need not disclose nor disqualify if judge and attorney sit on same not-for-profit organization's board of directors]).
This category also includes situations that initially may appear to be personal or close but are in fact instances of ordinary social hospitality. Pursuant to §100.4(D)(5)(c) of the Rules Governing Judicial Conduct, a judge may accept ordinary social hospitality even from attorneys who appear before them (see Opinions 95-99 [Vol. XIII] [full-time judge may attend and participate in member/guest golf outing as guest of attorney who practices in judge's court]; 91-136 [Vol. VIII] [judge may attend opening of new law office of attorney who appears in judge's court ]; 89-23 [Vol. III] [judge may attend formal dinner party celebrating prominent attorney's 75th birthday when attorney's firm appears in the judge's court, and other judges and prominent attorneys are likely to attend]; 87-12 [Vol. I] [judge may attend ordinary holiday-type party given by a law firm or legal agency]; see also Joint Opinion 05-89/05-90 [judge need not disclose that attorney appearing in judge's court attended judge's annual holiday party).[ ] A judge is not required to disclose such contacts nor to disqualify him/herself simply because the judge has participated in such events at the invitation of an attorney or law firm but is free to do so, even if a party appears without representation.
Nevertheless, while such social contact is permissible, it is not without limitation. Accordingly, the judge should make reasonable efforts to avoid private social activity with attorneys appearing before the judge during actual trial days (see Opinions 92-22 [Vol. IX]; 95-99 [Vol. XIII]); the judge must refrain from ex parte discussion about matters pending in the judge's court that involve the attorney (see Opinion 95-99 [Vol. XIII]); and the judge must avoid any actions that may be perceived to advance the private interests of an individual, office or other entity (see Opinion 06-170). Nor may such social contact occur if it would otherwise create an appearance of impropriety (see Opinions 92-22 [Vol. IX]; 06-170).
When an attorney with whom a judge has such a relationship appears before the judge, neither disqualification nor disclosure is required as long as the judge believes he/she can [*3]be fair and impartial. Rather, any decisions to disclose the nature of the relationship and any subsequent disqualification are left solely in the judge's discretion.

 II. Close Social Relationship
In contrast, if the relationship between a judge and an attorney can be characterized as a close social relationship, the judge must, at the very least, disclose the relationship either in writing or on the record, even if the judge believes he/she can be fair and impartial (see Joint Opinion 05-89/05-90). Whether the judge must disqualify him/herself when a party objects to the judge's continued participation in the matter after such disclosure remains solely within the judge's discretion (see People v Moreno, 70 NY2d 403 [1987]; Opinion 08-166). However, if a party appears without representation the judge must disqualify him/herself, and remittal is not permitted (see Opinion 08-204; Joint Opinion 07-114/07-120).
For example, where an attorney worked for several years in the judge's law firm while the attorney attended high school and college; worked for one year after graduating law school at a firm where the judge was a partner; subsequently maintained his/her own law practice in office space shared with the same law firm for two years; and for the last several years has maintained a personal relationship with the judge, during which time the judge's children were members of the attorney's wedding party; the judge, the attorney, and their spouses have dined together once a year; and the judge's children cared for the attorney's children, the judge and the attorney have a close social relationship (see Opinion 08-166). In the Committee's view, the judge must fully disclose these facts and the nature of the relationship whenever the attorney appears before the judge and must exercise his/her discretion in determining whether to recuse upon request. The judge must also consider whether, given the circumstances and the rationale for any objection to his/her continued participation in the case, his/her impartiality can reasonably be questioned. If so, the judge must disqualify him/herself and exercise recusal (see id).
If the judge decides to preside after fully disclosing the nature of the relationship with the attorney, the judge should put his/her reasons for doing so on the record (see Opinion 11-20).
This Opinion modifies prior Opinions 93-87 (Vol. XI) (judge not required to disclose that judge and attorney have maintained a friendship since law school) and 92-22 (Vol. IX) (judge may have breakfast, lunch or dinner with attorney who practices in the judge's court, but should avoid private social activity on actual trial days) to the extent they are inconsistent with this conclusion. This Opinion also modifies prior Joint Opinion 05-89/05-90 to the extent that it provides that a judge who has a close social relationship with an attorney who appears before the judge must disqualify him/herself, subject to remittal.

 III. Close Personal Relationship
Where a judge and an attorney maintain a close personal relationship, the judge's impartiality might reasonably be questioned (see 22 NYCRR 100.3[E][1]). Therefore, the judge must disqualify him/herself when the attorney appears in the judge's court (see Opinions 11-45; 07-26). Disqualification for this reason is subject to remittal (see 22 NYCRR 100.3[F]) unless a party appears without representation, in which case the judge must exercise recusal (see Opinion 08-204; Joint Opinion 07-114/07-120).
A close personal relationship is one where the judge and the attorney share intimate aspects of their personal lives. For example, where the judge, the attorney, and/or members of their immediate families share confidences, socialize regularly, vacation together, celebrate significant events in each other's lives and/or share interests that are important to them personally (see e.g. Opinions 11-45 [judge and former law partner have known each other since childhood; practiced law together for almost a decade in hometown; partnership ended within the past three years; have many mutual friends; they and spouses continue to see each other at social events and family outings; children are close friends and visit each other's homes; attorney is godparent of judge's child; the attorney's spouse buys small birthday and holiday gifts for judge's child each year] and 06-149 [attorney who lives in same city as judge drives to judge's house once or twice a month and they walk dogs together; for past two to four years, they dined together at a restaurant a few times each year and went to the beach together; attorney drove judge to re-election campaign events and has attended social functions at the judge's residence]).
In these circumstances involving close personal relationships, the judge must disqualify him/herself when the attorney appears before the judge (see e.g. Opinion 07-26 [judge disqualified subject to remittal where relationship is sufficiently close to give rise to perception that judge's impartiality might reasonably be questioned]). In Matter of Robert (1997 Ann Rep of NY Comm. on Jud. Conduct, at 127, sanction accepted, 89 NY2d 745 (1997), the judge was removed for presiding over cases involving persons with whom the judge had close personal relationships. Specifically, the judge, a former law enforcement officer, was friends for about 25 years with a law enforcement officer who was the arresting officer in several cases filed in the judge's court. Several years earlier, they had taken a cross-country motorcycle trip together; had fished together; had socialized in each other's homes; and often had coffee together in a local diner. The judge was also friends with an animal control officer and his father. The judge had coffee regularly with the father, and they discussed their common interest in guns. The judge and the animal control officer have hunted and fished together; have engaged in business dealings; have socialized at each other's homes; and on at least two occasions, had taken a long road trip together. Notwithstanding the judge's close personal relationship with the animal control officer, he presided over five animal control violation cases filed by the animal control officer. The judge also presided over numerous cases in which a close relative of the animal control officer and his father appeared before the judge as a defendant. Based on the appearance of impropriety, the Commission on Judicial Conduct confirmed the recommendation that the judge be removed (id.).
Opinion 11-20 is modified to the extent that it is inconsistent with this conclusion (judge who has close personal relationship with attorney must disclose nature and extent of relationship when attorney appears but has discretion to disqualify him/herself after considering all relevant factors). Also, Opinion 11-45 is modified to the extent that the relationship described is characterized as a close social relationship. Based on the standards articulated in the present opinion, the Committee now would characterize the relationship described as a close personal relationship.

 IV. Decision by the Commission on Judicial Conduct
In Matter of Huttner (2006 Ann Rep of NY Comm. on Jud. Conduct, at 193), the [*4]Commission advised that because the respondent had a close social relationship with an attorney (relationship included meals together, family celebrations, and visits to each others' homes),"[a]t the very least, respondent should have disclosed the relationship so that the parties and their attorneys, could have had an opportunity to consider whether to seek his disqualification (see Section 100.3[F] of the Rules)" (id. at 194). Based on the within current Committee Opinion, the Committee would characterize the relationship described in Matter of Huttner as a close personal relationship that would warrant disqualification, subject to remittal, unless a party appears without representation (see 22 NYCRR 100.3[E][1]; Opinion 08-204; Joint Opinion 07-114/07-120).

 V. Conclusion
A judge must disqualify him/herself in any proceeding in which the judge's impartiality might reasonably be questioned (see 22 NYCRR 100.3 [E][1]). Whether disqualification is required when an attorney, whom the judge knows or otherwise interacts with outside the courtroom, appears in the judge's courtroom, depends on the nature of their relationship. Generally, where a judge is acquainted with or casually socializes with an attorney in situations that are unplanned or coincidental, without more, neither disclosure nor disqualification is required. Nevertheless, the judge may choose to disclose such interactions with an attorney that occur outside the courtroom. Neither such a prophylactic disclosure nor a disqualification is required even if a party appears without representation.
Finally, where a judge maintains a close personal relationship with an attorney appearing before the judge (e.g. one that involves sharing intimate aspects of their lives or their families' lives), the judge must disqualify him/herself from the proceeding. Disqualification for this reason is subject to remittal, but only if all parties are represented by counsel.
(Advisory Comm on Jud Ethics Op 11-125, at 2-6 [2011].)[FN1]
The Committee has also issued opinions regarding whether a judge must recuse herself due to past political connections to a party or attorney. If at all, the time period to do so would not extend forever (e.g. Advisory Comm on Jud Ethics Op 12-28 [2012] [two years for fundraiser]; Op 07-26 [2007] [two years for campaign manager]); 89-107 [campaign manager, once judge can be impartial]).
Due to the passage of many years, this Court discerns no conflict of interest or issue of [*5]partiality were I to consider the application raised by order to show cause which Attorney Alatsas has submitted on behalf of Petitioner. Neither would this Court's present connection with Attorney Alatsas be characterized as either an acquaintanceship, close social relationship, or close personal relationship, as described by the Advisory Committee on Judicial Ethics, because this Court has probably not seen Attorney Alatsas in over ten years. Even back 20 years ago, this Court's connection with him would probably be characterized as an "acquaintanceship" which, according to the Committee's Opinion 11-125, requires neither disqualification nor disclosure.
Nonetheless this Court takes seriously the ethical prescriptions which mandate absolute impartiality as well as the need to impart to the public the principals that the judiciary maintains absolute impartiality, favors no party in an action or proceeding, and will adjudicate all matters in accordance with the law. The public's confidence in the court system is best served not only when the court system adheres to these precepts but also when the public perceives that the judiciary adheres to them. (See Matter of Raab, 100 NY2d 305 [2003].)[FN2]

"There can be no doubt that the State has an overriding interest in the integrity and impartiality of the judiciary. There is 'hardly *** a higher governmental interest than a State's interest in the quality of its judiciary". . . . Charged with administering the law, Judges may not actually or appear to make the dispensation of justice turn on political concerns. . . . The State's interest is not limited solely to preventing actual corruption through contributor-candidate arrangements. Of equal import is the prevention of the "appearance of corruption stemming from public awareness of the opportunities for abuse' " (Matter of Nicholson v State Commn. on Jud. Conduct, 50 NY2d 597, 607-608 [1980] [internal citations omitted].)
"With respect to recusal, '[a]bsent legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal' (People v Moreno, 70 NY2d 403, 405-406 [1987]). The decision is a discretionary one and is within the personal conscience of the court (see People v Moreno, supra; Saferstein v Klein, 288 AD2d 206 [2001]). Yet, 'it may be the better practice in some situations for a court to disqualify itself in a special effort to maintain the appearance of impartiality' (People v Moreno, supra at 406)." (Matter of Independence Party State Comm. Of NY v Berman, 20 AD3d 423, 424 [2d Dept 2005].) A Court should always be sensitive to the "aroma of favoritism" (Concord Assoc., L.P. v EPT Concord, LLC, 130 AD3d 1404, 1406 [3d Dept 2015], citing Matter of George [State Commn. on Jud. Conduct], 22 NY3d 323, 330 [2013]).
However, it has also been noted as follows: " 'A judge has an obligation not to recuse [*6]himself or herself, even if sued in connection with his or her duties, unless he or she is satisfied that he or she is unable to serve with complete impartiality, in fact or appearance' (Spremo v Babchik, 155 Misc 2d 796, 799, mod on other grounds 216 AD2d 382, lv denied 86 NY2d 709, cert denied 516 US 1161; see, Muka v New York State Bar Assn., 120 Misc 2d 897, 898-899). Recusal is a matter of conscience and was not automatically required as Loeber suggests (see, Spremo v Babchik, supra). In our view, the Trial Judge was not required to recuse himself." (Robert Marini Bldr v Rao, 263 AD2d 846, 848 [3d Dept 1999].)
This Court has no doubt that it would apply the law to Attorney Alatsas' client's situation without any favoritism—even in performing the mundane task of reviewing the order to show cause for the purpose of ordering an alternate mode of service. This Court's conscience would remain clear were it to adjudicate this special proceeding and not recuse itself.
Not all judges were politically active prior to assuming the bench. Past political involvement is not a sine qua non of qualification for a judicial position. The undersigned's political involvement facilitated encountering the beautiful mosaic of Kings County's residents in terms of diverse backgrounds, cultures, ethnicities, races, religions, gender identities and orientation, and professions. Experiencing diversity engenders treating people decently and with fairness. However, considering that this Court was involved in Brooklyn politics before having departed that world to assume the bench, there is much to be said for the proposition discussed above that the appearance to the public of an impartial judiciary is of as much importance as the actual impartiality.
The late esteemed Brooklyn Justice Arthur M. Schack observed, "While I am sure I can continue to be fair and impartial in deciding the instant matters before me, in the exercise of discretion and good conscience, and to avoid any speculation as to the rationale for my rulings, it is necessary that I immediately recuse myself" (Frankel v Congregation Yetev Lev D'Satmar, 17 Misc 3d 1114[A], 2007 NY Slip Op 51964[U], *6 [Sup Ct, Kings County 2007]).
Similarly, in the special proceeding at bar, the undersigned factors into account that there are needs to maintain the appearance of impartiality, to maximize public confidence in the judicial branch of government, and to avoid engendering speculation injurious to the Court in which I sit—especially in the unique, special situation where one's involvement with a lawsuit party's attorney derived from a close political-client relationship. Further informing this Court's determination is that unlike in a rural courthouse, there are many other Justices available in this county to whom this special proceeding can be quickly reassigned.
Accordingly, IT IS HEREBY ORDERED that the undersigned recuses himself from all matters pertaining to the instant special proceeding, including the review of the hereinabove described order to show cause. This Court returns it to the Clerk of Part 72 for reassignment to another Justice of Supreme Court, Kings County, for disposition.[FN3]

E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1: This opinion was modified by the Committee as follows:
 Please Note: This opinion has been modified by Opinion 22-138, which requires "disclosure for two years after the judge is a social guest at an attorney's wedding." See Opinion 22-138 for more details.

Please Note: This opinion has also been modified by Opinion 21-22(A) concerning a judge's obligations when a party is appearing without counsel. As stated in Opinion 21-22(A), "we no longer prohibit remittal of disqualification merely because a party is unrepresented. We hereby modify our prior opinions to abolish that requirement." This also affects opinions "where disclosure (or disclosure and insulation) is mandated in lieu of outright disqualification" (see id. fn 3).
(Advisory Comm on Jud Ethics Op 11-125.)

Footnote 2: Part IV, § 10 of this Court's IAS Part 2 Rules provides:

 Recusals. The Court takes seriously the provisions of 22 NYCRR 100.3(E). The Court may on application of a party or sua sponte recuse itself when appropriate. Counsel must inform the Court and adversaries if it believes that a recusal is possibly appropriate. Counsel must inform the Court and adversaries if they or their client knows the Court, the Court's spouse or other close family member, or a Court staff member from a context outside the confines of the court system or if they or their client engaged in litigation previously with the Court, the Court's spouse or other close family member, or a Court staff member. If in doubt as to whether to disclose the information, you should disclose it. Determinations of recusal shall be made by the Court.

Footnote 3: Because a court is the sole arbiter of whether to recuse itself in a particular case, absent a legal disqualification (see Vogelgesang v Vogelgesang, 71 AD3d 1131 [2d Dept 2010]; Vest v Vest, 50 AD3d 776 [2d Dept 2008]; People v Grier, 273 AD2d 403 [2d Dept 2000]), this opinion shall not be construed as encouraging any other court to do so as each judge is entitled to exercise their own discretion (see People v Smith, 163 AD3d 1004 [2d Dept 2018]), which should be accorded considerable deference (see People v Brims, 145 AD3d 1025 [2d Dept 2016]). This opinion merely reflects the views of this Court insofar as this particular situation is concerned.